UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.P. MORGAN SECURITIES, LLC, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>MARK R. NICKEL, et al.,<br><br>          Defendants. | Case No. 24-cv-02574-JST<br><br>**ORDER DISMISSING COMPLAINT; TERMINATING AS MOOT MOTION TO DISMISS AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: ECF No. 10, 24 |

Before the Court is the motion for preliminary injunction filed by Plaintiffs J.P. Morgan Securities, LLC; J.P. Morgan Private Wealth Advisors LLC; and JPMorgan Chase Bank, N.A. ("JPMC Bank") (collectively, "Plaintiffs"). ECF No. 10.[1] Also before the Court is Defendants'[2] motion to dismiss for lack of jurisdiction or, in the alternative, to stay and compel arbitration. ECF No. 24.

**I.     BACKGROUND**

   **A.     Factual Background**

Plaintiffs allege the following facts in their complaint and their motion for preliminary injunction. Defendants are former employees of First Republic Bank ("FRB") who signed promissory notes for loans that FRB made to them. *See* ECF No. 1 ¶¶ 28–162. Under the terms of the promissory notes, if an employee resigned from FRB, the full amount of the loan plus interest

---

[1] The Federal Deposit Insurance Corporation as Receiver for First Republic Bank ("FDIC-R") has appeared as an interested party in this case and filed a joinder in Plaintiffs' motion for preliminary injunction. ECF No. 12.

[2] Defendants are Mark R. Nickel, Brian J. Addington, Mark A. Friedman, Mitchell R. Peters, Robert P. Gehlen, David Mucha, Larry L. Rothenberg, Shaun M. Van Vliet, David E. Farber, Anne Golden, Schuyler H. Perry, Timothy Deygoo, Brian J. Zakrocki, Joseph W. Wladyka, Steven Levine, and Laszlo Paul Vasady-Kovacs.

became due upon the employee's resignation. *See id.* Defendants each resigned from FRB in the spring of 2023, but none has repaid the loans. *See id.*

On May 1, 2023, the State of California closed FRB and appointed FDIC-R as receiver for the failed institution. *Id.* ¶ 15; *see id.* at 33–36. The same day, FDIC-R entered into a Purchase & Assumption Agreement with JPMC Bank, transferring substantially all assets of FRB to it. *Id.* ¶ 21.

Between July 28, 2023 and February 29, 2024, First Republic Investment Management, Inc. ("FRIM") and First Republic Securities Company, LLC ("FRSC")[3] commenced arbitration actions before the Financial Industry Regulatory Authority ("FINRA") against all sixteen defendants, either individually or in groups of up to four, seeking repayment of the outstanding balance on the loans from FRB. *See id.* ¶¶ 28–162.

Each Defendant filed an answer asserting numerous affirmative defenses and counterclaims in the FINRA arbitrations. *See* ECF Nos. 10-5 to 10-13. FRIM and FRSC then filed answers to Defendants' counterclaims asserting that those claims stemmed from pre-purchase conduct by the failed institution, FRB, and therefore were ineligible for arbitration under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821; that they are subject to FIRREA's administrative exhaustion requirement; and that they can only be brought against FDIC-R as receiver for the FRB. *See* ECF Nos. 24-5, 24-8, 24-10, 24-12, 24-14, 24-17, 24-19, 24-21, 24-25. In two of the arbitrations, FRIM and FRSC also filed motions to dismiss containing the same basic contentions. *See* ECF Nos. 24-22, 24-26. FINRA denied the motions to dismiss without prejudice in a form order containing no substantive reasoning. *See* ECF Nos. 24-23, 24-27. In each arbitration, FRIM and FRSC then requested that FINRA join FDIC-R as a necessary party, again arguing that Defendants' counterclaims and defenses could only be asserted against FDIC-R. *See* ECF No. 10-14. FINRA denied the request, stating that because FDIC-R was not under its jurisdiction, claims against FDIC-R would need to

---

[3] For simplicity, the Court refers to FRIM and FRSC by these acronyms even when describing events that occurred after the names of those entities changed. FRIM is now known as J.P. Morgan Private Wealth Advisors LLC, and the successor in interest of FRSC is J.P. Morgan Securities, LLC.

2

be brought in another forum.  *See* ECF No. 10-15.

### B.     Procedural Background

On April 30, 2024, Plaintiffs filed this action seeking an injunction prohibiting Defendants from:

> asserting or pursuing any claims, counterclaims, demands, defenses or arguments against Plaintiffs in any proceeding, including but not limited to the arbitrations they have commenced before the Financial Industry Regulatory Authority ("FINRA") (collectively, the "FINRA Arbitrations"), that arise out of or relate to the failed First Republic Bank, its affiliates, subsidiaries, or its and their successors, including but not limited to those that arise out of or relate to the Advisor Defendants' employment with or termination from First Republic Bank and specifically the counterclaims they asserted in their respective FINRA arbitrations seeking to avoid their obligations to repay promissory notes[.]

ECF No. 1 ¶ 1.

Plaintiffs also sought a declaration that FIRREA bars Defendants from pursuing these claims in the ongoing FINRA arbitrations.  *Id.* ¶ 2.  On May 3, 2024, Plaintiffs filed a corresponding motion for preliminary injunction.  ECF No. 10.  FDIC-R joined in the motion as an interested party on May 8, 2024.  ECF No. 12.  Defendants filed their opposition to the motion on June 4, 2024, ECF No. 26, and Plaintiffs filed a reply on June 18, 2024, ECF No. 32.

On June 4, 2024, Defendants filed a motion to dismiss for lack of jurisdiction, or, in the alternative, to stay and compel arbitration.  FDIC-R filed an opposition on June 18, 2024, ECF No. 31, and Defendants filed a reply on June 25, 2024, ECF No. 34.

On July 9, 2024, the Court ordered supplemental briefing on the issue of ripeness.  ECF No. 36.  On July 25, 2024, FDIC-R moved for a temporary restraining order ("TRO") to block Defendant Steven Levine's final arbitration hearing, which was scheduled to begin on August 5, 2024, from proceeding until the Court ruled on Plaintiffs' pending motion for preliminary injunction.  ECF No. 39.  Defendants filed an opposition on July 29, 2024.  ECF No. 42.  After holding a status conference on July 30, 2024, *see* ECF No. 44, the Court denied the motion for TRO on July 31, 2024.  ECF No. 47.

Defendants filed their supplemental brief regarding ripeness on July 22, 2024.  ECF No. 37.  Plaintiffs and FDIC-R each filed a supplemental brief on August 5, 2024.  ECF No. 49–50.

3

On September 4, 2024, the parties requested that the Court not rule on the instant motions because they were trying to settle the case. ECF No. 57. On April 23, 2025, Defendants apprised the Court that they no longer believed that further delays "would assist with settlement negotiations," and requested that the Court decide the motions. ECF No. 66.

## II.     JURISDICTION

The Court begins by examining whether it has jurisdiction over this matter. *See Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013) ("Subject matter jurisdiction can never be forfeited or waived, and federal courts have a continuing, independent obligation to determine whether subject matter jurisdiction exists.").

### A.     Legal Standard

"Article III of the Constitution empowers [the lower federal courts] "to adjudicate only 'live cases or controversies,' not 'to issue advisory opinions [or] to declare rights in hypothetical cases.'" *Clark v. City of Seattle*, 899 F.3d 802, 808 (9th Cir. 2018) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)). "At the core of the Article III case-or-controversy requirement is the doctrine of standing." *Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.*, 816 F.3d 1241, 1248 (9th Cir. 2016) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). "To satisfy 'the irreducible constitutional minimum of standing,' a plaintiff must establish three elements: (1) that the plaintiff has 'suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical,' (2) that there is 'a causal connection between the injury and the conduct complained of,' and (3) that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Hall v. United States Dep't of Agric.*, 984 F.3d 825, 833 (9th Cir. 2020) (quoting *Lujan*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted)).

Courts also apply the related doctrine of ripeness "'to determine whether a case presents a live case or controversy' over which [they] have jurisdiction under Article III." *Safer Chems., Healthy Fams. v. U.S. Env't Prot. Agency*, 943 F.3d 397, 411 (9th Cir. 2019) (quoting *Clark*, 899 F.3d at 808). The "'ripeness inquiry' has often involved 'both a constitutional and a prudential

4

component'" because the doctrine is "derived 'both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Id.* (quoting *Clark*, 899 F.3d at 809) (internal quotation marks and citation omitted).  Although a court may decline to exercise jurisdiction for prudential reasons where a case meets the requirements of Article III, it may never exercise jurisdiction where constitutional ripeness is lacking.  *See id.* at 412; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

"Constitutional ripeness is often treated under the rubric of standing because ripeness coincides squarely with standing's injury in fact prong." *Safer Chemicals, Healthy Fams.*, 943 F.3d at 411 (alteration omitted) (quoting *Clark*, 899 F.3d at 809).  "To satisfy the constitutional ripeness requirement, a case 'must present issues that are definite and concrete, not hypothetical or abstract.'" *Id.* (quoting *Clark*, 899 F.3d at 809).  "[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).  "That is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing." *Id.* (citing *Lujan*, 504 U.S. at 560).

The rule that Article III courts may only adjudicate cases or controversies "is 'not relaxed in the declaratory judgment context.'" *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1022 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 190 (2023) (quoting *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc)).  "The Declaratory Judgment Act does not confer jurisdiction." *Id.* at 1022–23 (citing 28 U.S.C. §§ 2201–02 and *Allen v. Milas*, 896 F.3d 1094, 1099 (9th Cir. 2018)).  Accordingly, a party seeking declaratory relief must establish that its case is justiciable under the Article III doctrines of standing and ripeness.  *San Diego Cnty. Credit Union*, 65 F.4th at 1022; *see also 50 Exch. Terrace LLC v. Mount Vernon Specialty Ins. Co.*, No. 223CV09557JLSMAR, 2024 WL 628363 (C.D. Cal. Feb. 13, 2024) (dismissing declaratory judgment action for lack of Article III standing and ripeness and noting that a "[p]laintiff cannot sidestep its inability to plead 'an actual and imminent' injury by noting that it seeks declaratory relief").

**B.     Discussion**

Plaintiffs ask the Court to declare that FIRREA bars Defendants from asserting certain counterclaims and other arguments in ongoing arbitrations and to enjoin them from pursuing those claims while the remaining aspects of the arbitrations proceed.  They make this request although they have already submitted their arguments regarding FIRREA to the arbitration panels and have yet to receive a decision.  The answer to the question whether Defendants' counterclaims implicate conduct that occurred before or after Plaintiffs purchased FRB's assets will determine whether FIRREA applies to the counterclaims at all.  *See Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1215 (9th Cir. 2012).  Accordingly, the applicability of FIRREA to the counterclaims in question has not been established in the arbitration proceeding, nor has it been established that FINRA would adjudicate the claims if it were to determine that FIRREA applies.  *See, e.g.*, ECF No. 10-15 (responses from FINRA declining to add FDIC-R as a party to the arbitrations and explaining that it lacks jurisdiction over claims asserted against FDIC-R, which is not a party to the arbitration).

"A case is ripe where the essential facts establishing the right to declaratory relief have already occurred."  *Terpin v. AT&T Mobility*, LLC, 399 F. Supp. 3d 1035 (C.D. Cal. 2019) (quoting *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1192 (9th Cir. 2000)) (internal quotation marks omitted).  Finding a sufficiently alleged injury on the present record would require the Court either to speculate how the FINRA panels will decide the relevant factual issue or to decide that issue in their stead.  Plaintiffs have not persuaded the Court that it has jurisdiction to do either.

As the Court detailed in its order denying FDIC-R's motion for a TRO, ECF No. 47 at 5–7, other district courts have held that disputes depending on the outcome of an issue in an ongoing arbitration are not ripe for adjudication.  In *Young Habliston*, for example, Judge Berman Jackson determined that plaintiffs' claim that a FINRA arbitration panel made unfair rulings was unripe because the arbitration remained ongoing.  *Young Habliston v. Finra Regulation, Inc.*, No. 15-cv-2225 (ABJ), 2017 WL 396580, at *5 (D.D.C. Jan. 27, 2017) ("Since the arbitration is still ongoing, plaintiffs' challenge to the proceeding is not ripe for review.").

Judge Curiel then relied on *Young Habliston* to determine that plaintiffs' claims were not

ripe in *Cristo v. U.S. Sec. & Exch. Comm'n*, No. 19CV1910-GPC(MDD), 2020 WL 2735175, at *7–8 (S.D. Cal. May 26, 2020) (*Cristo I*); and *Cristo v. U.S. Sec. & Exch. Comm'n*, No. 19CV1910-GPC(MDD), 2020 WL 4040340, at *4–6 (S.D. Cal. July 17, 2020) (*Cristo II*). In *Cristo I*, the court determined that because "[t]he outcome of the arbitration has yet to be determined[,] under an Article III analysis, Plaintiff has not shown and cannot show that he has suffered any concrete injury or that any harm is imminent." 2020 WL 2735175, at *8. Shortly thereafter, the remaining defendants in the case also moved to dismiss, and the court again granted dismissal on ripeness grounds. *Cristo II*, 2020 WL 4040340, at *5 ("These allegations concern conduct currently pending with the arbitration panel which are not yet concluded, and are therefore, not ripe.").

Here, if the arbitration panel makes an award that exceeds its authority, Plaintiffs can seek relief from that decision in federal court. *See* 9 U.S.C. § 10(a)(4); *Cristo II*, 2020 WL 4040340, at *6 ("[O]nce the arbitration panel issues its decision, Plaintiff may seek to vacate or confirm the arbitration award . . . . Therefore, Plaintiff may seek relief from the arbitrator panel's decision once it is completed but not before."); *cf. Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734–35 (1998) (holding that cost of potential future litigation did not justify immediate review of an otherwise unripe matter and observing that "the disadvantages of a premature review that may prove too abstract or unnecessary ordinarily outweigh the additional costs of—even repetitive—postimplementation litigation").

Of course, the arbitration panel could also agree with Plaintiffs' arguments that Defendants' counterclaims concern pre-purchase conduct and dismiss them based on FIRREA, as happened in *Saffer v. JP Morgan Chase Bank, N.A.*, 225 Cal. App. 4th 1239 (2014). In that case, plaintiff asserted claims against Washington Mutual Bank and Chase Manhattan Bank in California state court. JP Morgan Chase Bank ("JPMC") answered the complaint as the "acquirer of certain assets and liabilities of Washington Mutual Bank from the FDIC acting as receiver." *Id.* at 1244. JPMC then successfully moved to compel arbitration. Once there, JPMC moved to dismiss plaintiff's claims as barred by FIRREA, and the arbitrator granted the motion. *Id.* at 1245. That the same thing might occur in this case shows that Plaintiffs will not suffer irreparable harm

7

if the arbitration is not enjoined. ECF No. 10 at 25.[4]

Plaintiffs rely heavily on *Axon Enterprise v. FTC*, 598 U.S. 175, 191–92 (2023). In *Axon*, the Supreme Court held that district courts had jurisdiction to consider plaintiffs' constitutional challenge to the structure of the Securities Exchange Commission and Federal Trade Commission despite the statutory requirement that claims be exhausted through the agency and then reviewed in a court of appeals. *Id.* at 180.

*Axon* differs from this case in at least two key respects. First, the claims that ALJs' tenure protections violated Article II were "extraordinary claims" that superseded the "ordinary statutory review scheme," *id.*, both because of their constitutional nature and the fact that they challenged the administrative boards' very existence, *see id.* at 194–96. By contrast, Plaintiffs here do not challenge the legitimacy of FINRA or its panels. Indeed, they do not even want to stop the arbitrations in their entirety—FRIM and FRSC initiated these arbitrations and continue to participate in them, including by having raised the same arguments before the panels that they now raise here. They only ask this Court to enjoin their opponents' claims ahead of the arbitrators' impending decision on the same issues.

Second, the *Axon* plaintiffs initiated their constitutional challenges in the district courts "before the ALJ hearing began" or at the time that the agency charged them with violations. *Id.* at 182. The *Axon* plaintiffs did not first assert their constitutional arguments in the administrative proceedings, then file concurrent lawsuits in the district court while the ALJs were still considering the question. Unlike this Court, the district courts in *Axon* were not asked to decide a question that had been raised in a parallel proceeding and remained pending before that decisionmaker.

Here, whether the claims pertain to pre- or post-purchase conduct is an open factual question in the arbitrations, and the existence of Plaintiffs' alleged injury is contingent on the

---

[4] JPMC then successfully moved to confirm the arbitration award in the California Superior Court, and plaintiff appealed. The California Court of Appeal dismissed the appeal due to a lack of subject matter jurisdiction, "resulting from [plaintiff] Saffer's failure to timely exhaust his administrative remedies with the FDIC as required by FIRREA." *Saffer*, 225 Cal. App. 4th at 1246. This Court cites *Saffer* not for the Court of Appeals's holding but for the example provided by its procedural history.

8

outcome of that question. Plaintiffs' alleged injury is therefore speculative. Because of this open factual issue, this Court cannot conclude that Plaintiffs are being forced to conduct an illegitimate arbitration or that such harm is "*certainly* impending." *United States v. Streich*, 560 F.3d 926, 931 (9th Cir. 2009), *cert. denied*, 558 U.S. 920 (2009) (emphasis in original); *see also Addington*, 606 F.3d at 1179 ("A question is fit for decision when it can be decided without considering 'contingent future events that may or may not occur as anticipated, or indeed may not occur at all.'" (quoting *Cardenas v. Anzai*, 311 F.3d 929, 934 (9th Cir. 2002)); *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (explaining that declaratory judgment actions that satisfy the case-or-controversy requirement must "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts (quotation omitted)). Like the plaintiffs in *Young Habliston* and *Cristo*, they instead present a premature request for this Court to decide a pending issue in an ongoing arbitration.[5]

Plaintiffs also argue that the Ninth Circuit's decision in *Benson*, 673 F.3d at 1209, requires the Court to resolve the question of whether Defendants' counterclaims pertain to pre- or post-purchase conduct by examining the pleadings filed with FINRA. ECF No. 49 at 13–14. In *Benson*, the Ninth Circuit held that "a claim that is functionally, albeit not formally," against a failed institution is subject to the FIRREA exhaustion requirement. *Benson*, 673 F.3d at 1214. But *Benson* did not involve an arbitration or other parallel proceeding.

In addition to *Benson*, FDIC-R relies on unpublished district court decisions in which courts enjoined arbitrations because the claims therein were barred by FIRREA or the analogous Federal Credit Union Act. ECF No. 50 at 7 (citing *Multibank 2010-1 SFR Venture LLC v. Saunders*, No. 2:11-CV-1245 JCM (CWH), 2011 WL 5546960, at *3 (D. Nev. Nov. 14, 2011); *Nat'l Credit Union Admin. Bd. v. Lormet Cmty. Fed. Credit Union*, No. 1:10 CV 1964, 2010 WL 4806794, at *4, 7 (N.D. Ohio Nov. 18, 2010); *People's Tr. Fed. Credit Union v. Nat'l Credit*

---

[5] FDIC-R also seeks to distinguish these cases because they did not involve FIRREA. *See* ECF No. 49 at 10; ECF No. 50 at 6. But it has not been determined whether this case involves FIRREA.

9

1  *Union Admin. Bd.*, No. CR 16-0611 JB/SCY, 2016 WL 4491635, at *10 (D.N.M. Aug. 8, 2016)).

2  As the Court noted in its order denying the motion for TRO, none of these cases considered the

3  issue of ripeness, nor does it appear that any of them involved a live factual dispute before an

4  arbitration panel about pre- versus post-purchase conduct.  *See* ECF No. 47 at 7–8.  Thus, these

5  cases are not helpful.

6        Finally, Plaintiffs assert prudential arguments that the Court should decide their claims due

7  to the congressional intent behind FIRREA.  ECF No. 49 at 14–16.  Prudential considerations,

8  however, including statutes providing for judicial review, cannot "make a claim *constitutionally*

9  ripe."  *Safer Chems., Healthy Fams.*, 943 F.3d at 412 (emphasis in original).  "Injury in fact is a

10 constitutional requirement, and [i]t is settled that Congress cannot erase Article III's standing

11 requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have

12 standing."  *Id.* (quoting *Spokeo*, 578 U.S. at 339) (alteration in original) (internal quotation marks

13 omitted).  "And while *Spokeo* itself addressed Article III standing, the same is necessarily true of

14 Article III ripeness, which is also a constitutional requirement."  *Id.* (citations omitted).  Plaintiffs

15 "must therefore establish that their case is justiciable under the Article III doctrines of standing

16 and ripeness."  *Id.*

17       In sum, finding that Plaintiffs have alleged a sufficiently imminent injury at this juncture

18 would require the Court to find, at least implicitly, that Defendants' counterclaims in the FINRA

19 proceedings pertain to pre-purchase conduct.  Plaintiffs have raised and submitted that issue to the

20 FINRA panels, and it remains pending before them.  On this record, Plaintiffs have not established

21 that an actual controversy is ripe for this Court's adjudication.  *See, e.g.*, *Young Habliston*, 2017

22 WL 396580, at *5.

## CONCLUSION

24       Because the Court lacks subject matter jurisdiction over this unripe dispute, the action is

25 / / /

26 / / /

27 / / /

28 / / /

1  dismissed without prejudice.  The motion to dismiss or to compel arbitration, ECF No. 24, and the
2  motion for preliminary injunction, ECF No. 10, are terminated as moot.
3  **IT IS SO ORDERED.**
4  Dated:  April 29, 2025



JON S. TIGAR
United States District Judge